**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HOLLY SCHUETZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: |
| v. ) | |
| ) | |
| NATIONAL RAILROAD PASSENGER ) | |
| CORPORATION, d/b/a AMTRAK, ) | |
| a District of Columbia corporation. ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, HOLLY SCHUETZ, by her attorneys, Jennifer Sender and Andrés J. Gallegos of Robbins Salomon & Patt, Ltd., for her Complaint against Defendant, NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK (hereinafter, "AMTRAK" or "Defendant"), states as follows:

### JURISDICTION AND VENUE

1. This court has subject matter jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331 as the Plaintiff's claims alleged herein arise under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.* and the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794a, *et seq.* Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure. This court has supplemental jurisdiction over Counts III and IV pursuant to 28 U.S.C. § 1367.

1496837

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). All of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## THE PARTIES

3. Plaintiff Holly Schuetz is a 52 year old woman who was born with mild cerebral palsy. Although she can ambulate independently, she has balance problems for which she uses the assistance of a trained service dog. Ms. Schuetz is profoundly deaf and her primary means of communication is American Sign Language. She can read lips, but under optimal conditions, she is only able to capture 20% - 30% of the conversation. Factors such as large crowds, multiple speakers, and stress significantly diminish her ability to lip read. She is a qualified individual with a disability within the meaning of all applicable statutes. Ms. Schuetz resides in Oak Park, Illinois.

4. Defendant AMTRAK is a corporation organized under the laws of the District of Columbia. AMTRAK provides passenger rail service to more than 500 stations in 48 states, including Illinois.

## PLAINTIFF'S EXPERIENCE

5. For months, Plaintiff was planning and looking forward to attending her high school class reunion in downstate Illinois. The reunion was scheduled for October 9 – 11, 2015. On October 9, 2015, Plaintiff went to Union Station in Chicago, Illinois, to travel to Springfield. A friend had purchased her round trip ticket on AMTRAK's website. Plaintiff was scheduled to take the Texas Eagle, Train 21, a train departing at 1:45 p.m. and arriving in Springfield at 5:14 p.m. Plaintiff had her service dog with her.

6.     On October 9, 2015 around 1:30 p.m., Plaintiff waited in line in the terminal to board the train. She gave her ticket to an AMTRAK conductor ("Conductor 1") who scanned it. Conductor 1 started talking to Plaintiff. Plaintiff signaled to the conductor that she was deaf. Through lip reading, what she was able to understand was that she was not allowed to board the train because her ticket did not indicate that she was traveling with a service animal. Conductor 1 escorted her to another AMTRAK employee. At that time, an AMTRAK manager walked past and the AMTRAK employee explained the situation. The AMTRAK manager told the employee to get Plaintiff on the train. Two additional AMTRAK employees joined the conversation, and with four AMTRAK people talking, Plaintiff could not understand most of the conversation.

7.     The two AMTRAK employees then assisted Plaintiff to the train and placed her on board. Plaintiff did not see any conductors. Her service animal lay down underneath her seat and remained there quietly.

8.     After the train left the station, a young conductor ("Conductor 2") entered the car the Plaintiff was in and began verifying tickets. He looked at Plaintiff's ticket and began speaking very quickly to her. Plaintiff indicated to Conductor 2 that she was deaf and asked if he could speak slowly. Plaintiff offered him a pen and paper to communicate. Conductor 2 ignored her and walked away. The conductor's conduct was rude and disrespectful.

9.     Shortly thereafter, Conductor 1 (the same conductor who originally told her she could not board with her service animal) approached her. Knowing from his prior encounter with her that she was deaf, he nonetheless began talking to her. She offered him paper and a pen to communicate. He wrote, "At the next stop, Joliet, you need to get off train. No paperwork on dog!" Plaintiff informed him that her dog was a service animal and showed the service animal

identification card. Conductor 1 told her that it did not matter, and he walked away. Plaintiff became so upset, frustrated, and scared that she began to cry.

10. Upon arrival at the next stop, one of the two conductors escorted Plaintiff and her service dog off the train. She had no choice but to get off the train. She upset but calm. As the train doors opened, a female AMTRAK employee and a security guard were standing directly in front of the doors. Plaintiff was shocked, upset, scared and embarrassed, because she felt as she was being treated like a criminal. The female employee asked the Conductor why Plaintiff was being put off the train, but Plaintiff did not understand the answer.

11. The AMTRAK employee and the security guard escorted Plaintiff to the terminal. At the time when she was escorted off the train, Plaintiff did not know where she was being taken, the specific reason why she was removed from the train after being allowed on board with her service animal, or why there was a security guard. Plaintiff was confused, frustrated, emotionally distraught, stressed and scared. The AMTRAK employee and guard took her into the terminal.

12. In the terminal, the AMTRAK employee or agent was talking to Plaintiff, but Plaintiff could not understand her. After an exchange of notes about the train ticket, the AMTRAK employee indicated that she would call the AMTRAK office in Chicago to obtain a new ticket with the "Service Dog label" on it. While on the phone, the AMTRAK employee or agent asked Plaintiff (through note exchange and some verbal communication) details about her service animal. The AMTRAK employee or agent asked the dog's size, weight, breed, age, and tasks performed for Plaintiff. Plaintiff again presented the service animal's identification card. During this entire exchange, the guard remained in the vicinity. Plaintiff did not believe she

4

could leave. Further, she had no means to make alternative arrangements if she wanted to leave, as she was removed from the train at a location where she was not familiar or expected to be. Plaintiff was not able to leave the Joliet station for approximately three hours. During that time, she had no means by which to call her family or friends to explain what occurred, until the AMTRAK employee allowed her to use an ipad to email her friend.

13. The AMTRAK employee or agent finally provided Plaintiff with a new ticket with "Service Animal" printed on it. Plaintiff was allowed to board a train to Springfield, with her service animal. Once on the train, Plaintiff was continually concerned that she would be confronted by a conductor and put off the train again. Plaintiff arrived in Springfield two and a half hours later than she was originally scheduled.

14. The following Sunday, when she arrived at the Springfield AMTRAK station for her return trip home, she inquired whether she needed the reference to her service animal on her ticket, because she had her original ticket which did not have that information. The AMTRAK employee at the station advised that she did not. Plaintiff did not have any issues on her return trip.

## DEFENDANT'S CONDUCT

15. At all times relevant hereto, AMTRAK had in full force and effect, a policy regarding passengers traveling with service animals. The policy provided:

> "Service Animals. Generally, animals are not allowed on Amtrak. However, service animals are permitted in all areas where passengers are allowed. Service animals are animals that are trained to perform a specific task for the benefit of a person with a disability. Amtrak personnel may ask what task(s) the service animal performs. Carry-on pet guidelines do not pertain to passengers traveling with service animals." https://www.amtrak.com/service-animals-and-pet-policy

5

16. AMTRAK failed to provide Plaintiff, a person with a disability, the same access, use and enjoyment to transportation as other passengers, because of Plaintiff's disability. This unequal treatment occurred because, among other things: AMTRAK denied Plaintiff service based on her use of a service animal; and failed to provide adequate and appropriate auxiliary aids and services, like qualified sign language interpreters, or other means to achieve effective communication with customers who are deaf or have hearing disabilities. Further, AMTRAK's employees are not provided the proper training and support on AMTRAK's policies regarding service animals and on interacting with passengers and communicating with persons who are deaf.

17. Defendant AMTRAK's denial to Plaintiff of full and equal access to, enjoyment of and use of its transportation services manifests itself in at least three fundamental ways: (1) refusal to allow Plaintiff to ride its train on the basis of her use of a service animal; (2) failure to provide adequate and appropriate auxiliary aids and services, like qualified sign language interpreters available thru video remote interpretation, or other means to effectively communicate with passengers who are deaf; (3) unwarranted and deliberate removal from the train on the basis of her use of a service animal, after having determined prior to boarding that she is allowed travel with a service animal without any reference to the service animal on her ticket, and detention at the Joliet station until an employee or agent was instructed in the AMTRAK policy allowing her to travel on the train with a service animal; and (4) an absence of comprehensive policies and procedures and/or a failure to train its employees or agents as to policies and procedures to accommodate the Plaintiff's disability. These violations deprived the Plaintiff the full and equal access, use and enjoyment to Defendant's services, in violation of the ADA and the Rehabilitation Act.

18. AMTRAK is a "public entity" within the meaning of the ADA and the provider of intercity rail transportation.

19. AMTRAK receives annual federal appropriations, including grants from the U.S. Department of Transportation, Federal Railroad Administration, for general operating, capital, and debt services and, therefore, is a recipient of "federal financial assistance" within the meaning of the Rehabilitation Act.

20. Plaintiff travels to destinations in Wisconsin and to Springfield, Illinois, a couple time a year, and fears being discriminated against on Amtrak again, but would utilize Amtrak to get to those destinations if she is assured AMTRAK complies with its nondiscrimination mandates.

## COUNT I
## Violation of the Americans with Disabilities Act, 42 U.S.C. § 12131

21. At all times relevant, there was in full force and effect a statute known as the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12189, (the "ADA"), as amended; its implementing regulations applicable to all services, programs and activities provided or made available by public entities, *see* 28 C.F.R. Part 35, and the Department of Transportation's ("DOT's"), regulations implementing the ADA. 42 U.S.C. § 12164; *see* 49 C.F.R. Parts 37 and 38. Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). In so doing, Congress found that "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination." *Id.* § 12101(a)(1). Congress further found that "discrimination against individuals with disabilities

7

persists in such critical areas as . . . transportation . . ." and that the forms of discrimination encountered by individuals with disabilities include "the discriminatory effects of architectural, transportation, and communication barriers" *Id.* § 12101(a)(3), (5).

    22.    The ADA and its regulations, in pertinent part:

    A.    Impose a broad nondiscrimination mandate that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by a public entity. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

    B.    Requires that a public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.28 C.F.R. § 35.130(b)(7)(i).

    C.    Prohibits a public entity from imposing or applying eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered. 28 C.F.R. § 35.130(b)(8).

    D.    Requires that a public entity shall modify its policies, practices or procedures to permit the use of a service animal by an individual with a disability. 28 C.F.R. § 35.136(a).

    E.    Prohibits a public entity from requiring documentation, such as proof that the animal has been certified, trained or licensed as a service animal. 28 C.F.R. § 35.136(f).

    F.    Requires that a public entity shall take appropriate steps to ensure that communications with participants with disabilities are as effective as communications with others. 28 C.F.R. § 35.160(a).

    G.    Requires that a public entity shall furnish appropriate auxiliary aids and services were necessary to afford qualified individuals with disabilities, including participants, and equal opportunity to participate in and enjoy the benefits of, a service, program, or activity of a public entity. 28 C.F.R. § 35.160(b).

    H.    Public entities are not required to take any action that would result in a fundamental alteration or undue burden. 28 C.F.R. § 35.164. If an auxiliary aid or service would result in a fundamental alteration or undue burden, the public

      entity is still required to take any other action that does not result in a fundamental alteration or undue burden but would nevertheless ensure that, to the maximum extent possible, the individual with a disability still receives the benefits or services provided by the public entity. 28 C.F.R. § 35.164.

I.    Identifies as discriminatory the failure to maintain in operative condition those features of facilities and vehicles that are required to make the vehicles and facilities readily accessible to and usable by individuals with disabilities. These features include, but are not limited to, systems to facilitate communications with persons with impaired hearing. 49 C.F.R. § 37.161(a).

J.    Identifies as discriminatory refusing to permit service animals to accompany individuals with disabilities in vehicles. 49 C.F.R. § 37.167(d).

K.    Identifies as discriminatory the failure to ensure that personnel are trained to proficiency, as appropriate to their duties, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities. 49 C.F.R. § 37.173.

L.    Identifies as discriminatory an entity asking questions of a person with a disability about a service animal except for two inquiries to determine whether an animal qualifies as a service animal: if the animal is required because of a disability and what work or task the animal has been trained to perform. A public entity shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal. 28 C.F.R. § 35.136(f).

Pursuant to Congress' directive, *see* 42 U.S.C. § 12186(b), the Department of Justice has promulgated regulations to implement Title II's broad nondiscrimination mandate with respect to covered entities. One of these regulations, titled "Communications" specifies that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, including participants, companions and members of the public an equal opportunity to participate in, and enjoy the benefits of a service, program or activity of a public entity." 28 C.F.R. § 35.160(b)(1). The method of communication used by the individual involved, the nature, length, complexity and context of the communication involved will determine the type of auxiliary aid or service necessary to ensure effective communication. 28 CFR §35.160(b)(2). "In determining what types of auxiliary aids and services are necessary, a

public entity shall give primary consideration to the requests of individuals with disabilities. *Id.* Moreover, to "be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.*

## **DEFENDANT'S VIOLATIONS**

23. The acts and omissions of Defendant AMTRAK violated and continue to violate the ADA and its implementing regulations in one or more or all of the following manners:

- A. Defendant has discriminated against the Plaintiff by initially refusing to allow her to board the train with her service animal and, then having allowed her to board, subsequently removing her from the train and detaining her, in violation of the ADA's broad nondiscrimination mandates, 42 U.S.C. § 12101(b)(1).

- B. Defendant has discriminated against the Plaintiff by its failure to have systems or auxiliary aids and services available to permit Plaintiff to communicate effectively with its employees or agents at Union Station, with conductors on the train, and its employees or agents at the Joliet station, in violation of Defendant's nondiscrimination mandates to have and maintain in operative condition those features of facilities and vehicles that are required to make the vehicles and facilities readily accessible to and usable by individuals with disabilities. Those features include, but are not limited to, systems to facilitate communications with persons with impaired hearing, 28 C.F.R. § 35.160(b) and 49 C.F.R. § 37.161(a).

- C. Defendant has discriminated against the Plaintiff by denying her the use of her service animal on the train, in violation of 49 C.F.R. § 37.167(d), which permits service animals to accompany individuals with disabilities in vehicles and facilities.

- D. Defendant has discriminated against the Plaintiff in failing to properly train its employees or agents on the use of service animals; the indifference of the train conductors to Plaintiff's communication needs; her removal from the train; and detention of her for inappropriate questioning of her regarding her service animal, in violation of Defendant's legal obligation to ensure that its personnel are trained to proficiency, as appropriate to their duties, so that, *inter alia*, they properly assist and treat individuals with disabilities who use the service in a respectful and courteous way as required by 49 C.F.R. § 37.173.

- E. Defendant has discriminated against the Plaintiff in failing to properly train its employees or agents on the use of service animals, evidenced by the initial denial of Plaintiff to board the train, confronting the Plaintiff on the train for her service

10

animal not appearing on her ticket; and the inappropriate questions relating to her service animal by Defendant's employees or agents at the Joliet station and Union Station, in violation of Defendant's legal obligation to ensure that its personnel are trained to proficiency, as appropriate to their duties, as required by 49 C.F.R. § 37.173; and the restrictions on the inquiries that a public entity may make to determine whether an animal qualifies as a service animal under Title II of the ADA. 28 C.F.R. § 35.136(f); and Defendant's own Service Animal Policy.

F. Defendant has otherwise discriminated against the Plaintiff because of her disability.

24. Defendant's conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, Defendant will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries on the Plaintiff for which the Plaintiff will have no adequate remedy at law. Therefore, pursuant to section 308 of the ADA (42 U.S.C. § 12188), the Plaintiff is entitled to injunctive relief.

25. Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 12205.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A. A preliminary injunction and a permanent injunction, prohibiting Defendant AMTRAK from violating the ADA, 42 U.S.C. § 12181, *et seq.*, and compelling Defendant to comply with the ADA;

B. A declaration that Defendant AMTRAK is operating in a manner which discriminates against the Plaintiff based on her disabilities, and that Defendant fails to provide communication access to the Plaintiff as required by law;

C. A declaration that Defendant AMTRAK is operating in a manner which discriminates against the Plaintiff based on her disabilities, and that Defendant fails to provide equal access to its services and facilities to Plaintiff based on her use of a service animal as required by law;

D. Order AMTRAK to provide training to its appropriate employees and agents on its obligations under the ADA, and its implementing regulations, to achieve effective communication and permit the use of service animals;

11

    E.    An award of attorneys' fees and costs; and

    F.    Such other relief as the Court deems just.

## COUNT II
### Violation of the Rehabilitation Act, 29 U.S.C. § 794a

26.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a). The Plaintiff's claims in Count II arise under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, Public Law 93-112, 87 Stat. 355, as amended.

27-28.    Plaintiff incorporates by reference paragraphs 3 and 4 of the Section captioned "Parties" above.

29-37.    Plaintiff incorporates by reference paragraphs 5 to 13 of the Section captioned "Plaintiff's Experience" above.

38-43.    Plaintiff incorporates by reference paragraphs 13 to 18 of the Section captioned "Defendant's Conduct" above.

44.    Defendant AMTRAK receives federal financial assistance in the form of annual federal appropriations for general operating, capital, and debt services and is therefore subject to the antidiscrimination provisions of the Rehabilitation Act, as herein described.

45.    At all times relevant, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, and its implementing regulations, 49 C.F.R. § 27.7, which provide in pertinent part as follows:

    A.    "No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 49 C.F.R. § 27.7(a)

12

    B.    An individual with a disability is "otherwise qualified" to participate in covered programs and activities if that individual "meets the essential eligibility requirements for the receipt of such services." 49 C.F.R. § 27.5.

    C.    "Federal financial assistance" means "any grant, loan, contract … or any other arrangement by which the Department [of Transportation] provides or otherwise makes available assistance in the form of…[f]unds." 49 C.F.R. § 27.5.

    D.    "Recipients shall take appropriate steps to ensure that all communications with their applicants, employees and beneficiaries are available to persons with impaired vision and hearing." 49 C.F.R. § 27.7(c).

    E.    "A recipient, in providing any aid, benefit or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability: (i) Deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit or service; …(iii) Provide a qualified handicapped person with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefits, … as persons who are not handicapped; … (vii) Otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage or opportunity enjoyed by others receiving an aid, benefit or service. 49 C.F.R. § 27.7(b).

46.    At all relevant times herein, Defendant AMTRAK knew Plaintiff had federally protected rights to effective communication and the use of a service animal, and AMTRAK's acts and omissions alleged herein violated and continue to violate the Rehabilitation Act and its implementing regulations in one or more or all of the following manners:

    A. Defendant has, by reason of disability, discriminated against the Plaintiff by initially refusing to allow her to board the train with her service animal and, then having allowed her to board with her service animal, subsequently removing her from the train and detaining her for questioning, in violation of Section 504's broad nondiscrimination mandates, 29 U.S.C. § 794(a).

    B. Defendant has discriminated against the Plaintiff by its failure to have auxiliary aids and services available to communicate with Plaintiff and to permit Plaintiff to communicate effectively with Defendant's employees at Union Station, with conductors on the train, and its employees or agents at the Joliet station, 49 C.F.R. § 29.7(c).

C. Defendant has discriminated against the Plaintiff by denying her the use of her service animal on the train, in violation of 49 C.F.R. § 37.167(d), which permits service animals to accompany individuals with disabilities in vehicles and facilities.

D. Defendant has discriminated against the Plaintiff in failing to properly train its employees or agents on the use of service animals; the indifference of the train conductors to Plaintiff's communication needs; her removal from the train; and detention of her for inappropriate questioning of her regarding her service animal, in violation of Defendant's legal obligation to ensure that its personnel are trained to proficiency, as appropriate to their duties, so that, *inter alia*, they properly assist and treat individuals with disabilities who use the service in a respectful and courteous way as required by 49 C.F.R. § 37.173.

E. Defendant has discriminated against the Plaintiff in failing to properly train its employees or agents on the use of service animals; Defendant's own Service Animal Policy; and the inappropriate questions relating to her service animal by Defendant's employees or agents at the Joliet station and Union Station, in violation of Defendant's legal obligation to ensure that its personnel are trained to proficiency, as appropriate to their duties, as required by 49 C.F.R. § 37.173.

F. Defendant acted intentionally and with deliberate indifference, and knew or should have known that it had not provided the benefit of its services to Plaintiff and failed to ensure its communications with Plaintiff were effective.

G. Defendant has otherwise discriminated against the Plaintiff because of her disability.

47. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

48. Defendant's conduct has inflicted injury and damages upon the Plaintiff, including loss of civil rights, mental anguish, humiliation and mental pain and suffering.

49. Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

WHEREFORE, Plaintiff prays for the following relief:

A. A declaration that Defendant AMTRAK is operating in a manner which discriminates against the Plaintiff based on her disabilities, and that Defendant fails to provide communication access to the Plaintiff as required by law;

B. A declaration that Defendant AMTRAK is operating in a manner which discriminates against the Plaintiff based on her disabilities, and that Defendant fails to provide equal access to its services and facilities to Plaintiff based on her use of a service animal as required by law;

C. Order AMTRAK to provide training to its appropriate employees and agents on its obligations under the Rehabilitation Act, and its implementing regulations, to achieve effective communication and permit the use of service animals.

D. An award of compensatory monetary damages;

E. An award of attorneys' fees and costs; and

F. Such other relief as the Court deems just.

## COUNT III
### (False Imprisonment)

50. This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

51-52. Plaintiff incorporates by reference paragraphs 3 and 4 of the Section captioned "Parties" above.

53-61. Plaintiff incorporates by reference paragraphs 5 to 13 of the Section captioned "Plaintiff's Experience" above.

62-67. Plaintiff incorporates by reference paragraphs 13 to 18 of the Section captioned "Defendant's Conduct" above.

68. At all times relevant, Plaintiff was a paying passenger on the train operated by AMTRAK.

69. While in-transit from Chicago to Springfield, AMTRAK's employees or agents, acting within the scope of their employment, removed Plaintiff against her will from the train at the train station in Joliet, Illinois. AMTRAK employees removed Plaintiff from the train on the basis she was traveling with a service animal even though they knew AMTRAK's own policy instructed that passengers are entitled to ride on the train with service animals, and AMTRAK's obligations with respect to service animals under the ADA and the Rehabilitation Act.

70. Once AMTRAK's employees or agents removed Plaintiff from the train, AMTRAK's employee or agent accompanied by a security guard lead Plaintiff into the Joliet train station. The AMTRAK employee or agent with the guard detained Plaintiff for three hours against her will and without her consent while questioning her about her service animal, even though AMTRAK's own policy instructed that passengers are entitled to ride on the train with service animals, and service animals are permitted on trains under the ADA and Rehabilitation Act. Plaintiff, with her service animal, was finally allowed to board a 6:05 p.m. train to her destination.

71. The conduct by AMTRAK's employees or agents constituted false imprisonment. As a result of these actions, Plaintiff was deprived of liberty, suffered fright, humiliation, mental anguish and distress, was subjected to scorn and ridicule, and was caused to be delayed by several hours from reaching her intended destination.

72. The conduct of AMTRAK's employees or agents was committed against Plaintiff intentionally, maliciously, outrageously, wantonly and willfully and without probable or reasonable, cause, excuse or justification.

WHEREFORE, Plaintiff prays for the following relief:

    A.    An award of compensatory monetary damages; and

B.  Such other relief as the Court deems just.

## COUNT IV
### (Intentional Infliction of Emotional Distress)

73. This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

74-75. Plaintiff incorporates by reference paragraphs 3 and 4 of the Section captioned "Parties" above.

76-84. Plaintiff incorporates by reference paragraphs 5 to 13 of the Section captioned "Plaintiff's Experience" above.

85-90. Plaintiff incorporates by reference paragraphs 13 to 18 of the Section captioned "Defendant's Conduct" above.

91. At all times relevant, Plaintiff was a paying passenger on the train operated by AMTRAK.

92. While in-transit from Chicago to Springfield, AMTRAK's Conductor 2, acting within the scope of his employment and knowing that Plaintiff was deaf, refused her requests to speak slower and use a pen and paper to facilitate communication. Rather, he intentionally continued to speak to her quickly without any regard for her ability to comprehend his speech, even when he spoke to her about removing her from the train.

93. While in-transit from Chicago to Springfield, AMTRAK's conductor, acting within the scope of his employment, removed Plaintiff against her will from the train in Joliet. AMTRAK'S conductor knew or should have known AMTRAK's policy on service animals. Knowing that Plaintiff was already in emotional distress, and knowing that putting a passenger off the train prior to her destination would cause further emotional distress, the conductor

17

nonetheless put her off the train.

94. When AMTRAK's conductor removed Plaintiff from the train, they were met by another AMTRAK employee accompanied by an armed guard, who lead Plaintiff into the station and detained her against her will. Plaintiff was not told if the guard was an AMTRAK employee or a police officer. She was concerned that was being or might be arrested.

95. While being detained by the AMTRAK employee in the Joliet terminal, the guard remained in the vicinity the entire duration. The AMTRAK employee or agent knew that the continued detainment of the Plaintiff with the presence of the guard caused Plaintiff severe emotional distress, fear, and confusion. Nonetheless, the AMTRAK employee or agent did not explain to Plaintiff the reason for the guard's continued presence and did not tell the guard to leave.

96. Further, the AMTRAK employee or agent knew that Plaintiff was deaf and did little to attempt to assist her with effective communication, relying only on Plaintiff's ability to lip read and by the exchange of notes. During the detention, the AMTRAK employee asked Plaintiff a series of inappropriate questions regarding her service animal, including the dog's size, weight, breed, and age. The AMTRAK employee knew or should have known that the AMTRAK policy on service animals and the ADA, provide that the only permissible inquiries that can be made of a passenger traveling with a service animal are whether the animal is required because of a disability and the task that the service animal performs.

97. The outrageous conduct by AMTRAK's conductors and employees or agents constituted intentional infliction of emotional distress. Plaintiff suffered fright, humiliation, severe emotional anguish and distress, and was subjected to scorn and ridicule.

98. The conduct of AMTRAK's employees or agents was committed against Plaintiff

intentionally, maliciously, wantonly and willfully.

WHEREFORE, Plaintiff prays for the following relief:

    A.    An award of compensatory monetary damages; and

    B.    Such other relief as the Court deems just.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Dated:                           HOLLY SCHUETZ, Plaintiff.

                                /s/ Jennifer M. Sender

                                One of Her Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Attorneys for Plaintiff
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com